# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ILLINOIS ASSOCIATION OF REALTORS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.  06-3129 |
| DEAN MARTINEZ, Secretary, Department of Financial and Professional Regulation, in his official capacity, ) | ) ) ) ) | |
| Defendant. | ) ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant Dean Martinez's Combined Motion to Dismiss and Supporting Memorandum of Law (d/e 16) (Defendant's Motion) and Plaintiff's Objection to Magistrate Judge Order Denying Motion for Leave to Take Expedited Discovery (d/e 15) (Plaintiff's Objection).  Plaintiff Illinois Association of Realtors (IAR), an Illinois not-for-profit corporation that represents approximately 60,000 of the 90,000 regulated real estate licensees in the State of Illinois, filed the instant Complaint for Declaratory and Injunctive Relief (d/e 1) on June 21,

2006.  The IAR seeks a declaratory judgment that 68 Ill. Admin. Code §
1450.140(a)(4) infringes upon the IAR members' First Amendment rights
and an injunction against the enforcement of the challenged rule.  The
Defendant has filed a Motion to Dismiss pursuant to Fed. R. Civ. P.
12(b)(1) and Fed. R. Civ. P. 12(b)(6).  For the reasons set forth below, the
Defendant's Motion is DENIED, and Plaintiff's Objection is DENIED as
moot.

<u>BACKGROUND</u>

The IAR brings this lawsuit mounting a facial challenge to 68 Ill.
Admin. Code § 1450.140(a)(4) as promulgated by the Illinois Department
of Financial and Professional Regulation (DFPR) pursuant to its authority
under the Real Estate License Act of 2000 (Act).  225 ILCS 454/25-13.  The
IAR alleges that § 1450.140(a)(4) unconstitutionally restricts commercial
free speech in violation of the First Amendment to the United States
Constitution.  The facts as set forth in the Complaint are as follows.
Established in 1916, the IAR is headquartered in Springfield, Illinois, and
represents approximately 60,000 of the 90,000 regulated real estate
licensees in the State of Illinois.  The IAR members are licensed and
regulated by the DFPR, Division of Professional Regulation, Bureau of Real

Estate Professions.  Pursuant to the Act and regulations adopted thereunder, the real estate licensees, including the members of the IAR, are required to pay fees to the State of Illinois.  Appointed by the Governor of the State of Illinois, Defendant Martinez is the Secretary of the DFPR.  The Defendant is sued in his official capacity.

According to the Complaint, § 1450.140(a)(4) is designed to prohibit deceptive and misleading advertising by real estate licensees when advertising real estate brokerage services and properties for sale in a single-family zoning district.  The Complaint states that the challenged rule reads in relevant part:

> a)  Deceptive and misleading advertising includes, but is not limited to, the following:
>
> • • •
>
> 4)  *advertising a property in a manner that creates a reasonable likelihood of confusion regarding the permitted use of the property.  Advertising for a property zoned single family shall be deemed to be likely to confuse a buyer regarding the permitted use of the property where the advertising contains words or phrases suggesting multi-dwelling use, including but not limited to "apartment," "two units," "related living," "in-law arrangement" or "related apartment."*  (Emphasis added).
>
> • • •

Complaint, ¶ 8 (quoting §1450.140(a)(4)).  The Complaint states that any

3

real estate licensee that violates §1450.140(a)(4) would be subject to the following penalties:

> 225 ILCS 454/20-20 [Defendant] may refuse to issue or renew a license, may place on probation, suspend, or revoke any license or may censure, reprimand or otherwise discipline or impose a civil fine not to exceed $25,000 upon any licensee hereunder or anyone or any combination of the following causes:
>
> • • •
>
> (h)   when the licensee in performing, attempting to perform or pretending to perform any act as a broker, salesperson, or leasing agent or when the licensee is handling his or her own property, whether held by deed, option, or otherwise, is found guilty of:
>
> • • •
>
> > (4) *any misleading or untruthful advertising* or using any trade name or insignia of membership in any real estate organization of which the licensee is not a member. (Emphasis added).
>
> • • •

Complaint, ¶ 13.  The Complaint asserts that before § 1450.140(a)(4) went into effect, it was published pursuant to Illinois law as a proposed rule, for comments, in the Illinois Register dated November 4, 2005, 29 Ill. Reg. 17959.  See Complaint, Exh. 1.[1]  According to the Complaint, the IAR

---

[1]The Court notes that the IAR has attached 3 exhibits to its Complaint.  Exhibit 1 is a publication of the proposed rule in the Illinois Register dated November 4, 2005. Exhibit 2 is the IAR's letter to Defendant, dated December 16, 2005, commenting on the proposed amendments to the rules ( including the challenged rule) implementing the Act.   Exhibit 3 is Defendant's response to the IAR's December 16, 2005, letter. Defendant has not asked the Court to strike these Exhibits.  "A copy of any written

submitted a letter to Defendant raising concerns with the proposed rule's effect on its members' First Amendment rights. See Complaint, Exh. 2. On May 9, 2006, at the meeting of the Illinois Joint Committee on Administrative Rules, the Committee filed a Statement of Objection to Proposed Rulemaking by the DFPR, as set forth in 30 Ill. Reg. 9925 dated May 26, 2006. The Committee stated its objection as follows: " . . . Section 1450.140 lacks clarity in regard to what constitutes prohibited advertising for a property zoned single family." Complaint, ¶ 11.

The Complaint states that the Defendant filed a response to the IAR's comments concerning the proposed rule on January 19, 2006.[2]

---

instrument which is an Exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). Thus, the Court will consider the information set forth in the Exhibits in analyzing the Motion to Dismiss.

[2]The Department's January 19, 2006, response letter stated in relevant part:

Your response forwards three contentions: 1) that the proposed rule prohibits advertising that is not, in fact, false or misleading; 2) that the proposed rule runs afoul of First Amendment protections of the commercial speech . . . .

**1. The Proposed Rule is Targeted at False or Misleading Advertising**

Your comments take particular issue with what you describe as the rule's "per se" approach. The rules does [sic], as you suggest, prohibit certain phrases in certain situations as inherently misleading. However, this approach is based on statutory precedent, a factual conclusion based on review of field investigations, and consideration of the rule's impact on descriptions of physical aspects of advertised properties.

Despite the concerns raised by the IAR and the Committee, the proposed rule became effective on June 8, 2006.

The Complaint states that IAR members are under an imminent threat of prosecution because they are involved in the advertising of properties for sale and commonly employ the terms that are now deemed to be false and misleading under § 1450.140(a)(4) when advertising the sale

---

The Department's approach to characterizing false or misleading advertising has precedent in Section 3(a) of the Pharmacy Practice Act. 225 ILCS 85/3(a). . . . There is therefore precedent for deeming certain terms to be inherently misleading. The proposed rule merely applies that premise to real estate advertising.

Furthermore, the Department's determination that certain terms in certain contexts are inherently misleading is based on detailed examinations of data from the field. The Department reviewed advertisements and advertising terms to determine which words and phrases created the threat of consumer confusion.

Finally, the Department has already avoided regulating phrases that truly are merely physical descriptions of the property. The Department rejected inclusion of certain phrases based on that very point. The remaining phrases are ones that, in a single-family zoning district, suggest not just the physical characteristic, but also the prospect of multiple dwelling units.

**2. The Proposed Rule Respects Commercial Free Speech**

Your objection based on 1st Amendment free speech principles rests on the premise that the rule reaches speech not false or misleading. As indicated above, the rule is narrowly focused on false or misleading commercial speech, and therefore meets constitutional standards.

* * * *

Complaint, Exh. 3.

6

or lease of a property located in a single-family zoning district.

The Complaint further states that § 1450.140(a)(4) infringes upon the First Amendment rights of IAR members by prohibiting the use of certain terms or phrases and deeming such terms to be false and misleading per se, even though, under certain circumstances, the prohibited terms and phrases would accurately and truthfully describe the characteristics of a particular property located in a single-family zoning district.  The Complaint alleges that § 1450.140(a)(4) provides no exception to its general prohibition.

The Complaint alleges there are circumstances under which the prohibited terms or phrases, deemed misleading under § 1450.140(a)(4), could truthfully and accurately describe a particular property located in a single-family zoning district:

> There currently are instances, and more instances shall arise, where the zoning for a particular area is single family, yet properties located in the single family zoning have physical characteristics commonly referred to as "related living," "related apartment," "in-law arrangement," "two units," or "apartment."

> There are instances where the prohibited phrases are actually accurate descriptions of property located in a single family zoning district.  For instance, there are areas that have been down-zoned from multi-family use to single family use. The multi-family uses that are existing at the time of the down-

zoning then become legal non-conforming uses.  A legal, non-conforming use includes a house with an attached apartment that could also be advertised as "apartment," "two units," "in-law arrangement," or "related apartment."  Such a legal, non-conforming use can be sold to a subsequent owner who is entitled to the same non-conforming use.

Complaint, ¶¶ 16-17.  The Complaint states that there are instances where houses in single-family zoning districts will sometimes be built with a separate entrance, a separate kitchen, and separate bedrooms to accommodate extended family members that live there due to cultural, financial, or physical reasons.

The Complaint further asserts that there are also instances where cities and towns will have, within their zoning code use, variance procedures which may run with the land to subsequent owners, allowing a residence that is located in a single-family zoning district to add a related living apartment.  The Complaint alleges that the effect of § 1450.140(a)(4) would prevent an individual who legally owns and operates an apartment situated in a single-family zoning district from advertising such an apartment for sale or lease with a realtor or other real estate licensee.

According to the Complaint, as written, § 1450.140(a)(4) operates to prohibit constitutionally protected commercial speech because: (1) "the

commercial speech regards the lawful activity of advertising sale or lease of real estate"; (2) § 1450.140(a)(4) forbids the use of certain phrases or terms in the advertisement of properties located in a single-family zoning district even when such terms would accurately describe a particular property and would not be misleading or confusing; (3) there is no governmental interest in regulating truthful advertisement in connection with the sale or lease of real estate; (4) § 1450.140(a)(4) does not advance governmental interest; (5) the State has no interest in prohibiting truthful advertisement of the sale or lease of real estate; and (6) § 1450.140(a)(4) is not narrowly tailored to further the State's interest.  <u>Complaint</u>, ¶ 21.

The Complaint alleges that the IAR has representative standing because: (1) its individual members have standing to sue; (2) the interests it seeks to protect are germane to the IAR's purposes; and (3) neither the claims asserted nor the relief sought require the participation of its members.  The Complaint asserts that the IAR initiated the present lawsuit to protect its members' ability to engage in protected expression.

The Complaint asserts that the issues presented in this case are ripe for judicial resolution because § 1450.140(a)(4), which directly applies to all real estate licensees in the State of Illinois (including the IAR's 60,000

members), has been in effect since June 2006.  The Complaint thus alleges

that the challenged rule is an unconstitutional restriction of commercial free

speech under the First Amendment to the United States Constitution.

I.      MOTION TO DISMISS

ANALYSIS

Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack

of Article III ripeness and standing.[3]  In the alternative, Defendant contends

that this Court should abstain from reviewing this case under the Pullman

abstention doctrine.

A.   Justiciability

Under Article III of the United States Constitution, a party seeking

to invoke federal court jurisdiction must present an actual case or

controversy, a requirement that is referred to as the concept of justiciability.

See Flast v. Cohen, 392 U.S. 83, 95 (1968).  "Implicit in that limitation is

---

[3]The Court notes that, as mentioned supra, Defendant also moves to dismiss the
Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  However, the grounds, upon which
Defendant relies to dismiss the IRA's Complaint (ripeness, standing, and abstention)
relate solely to jurisdictional issues.  "The question of ripeness, like other challenges to
a court's subject matter jurisdiction, is treated as a motion under Rule 12(b)(1)." New
Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995).  Rule
12(b)(6) is not the proper vehicle for Defendant's argument.  The Court, therefore,
analyzes the instant Motion as one under Rule 12(b)(1), and not one under Rule
12(b)(6).

the requirement that the party invoking the court's jurisdiction have standing." Kyles v. J.K. Guardian Security Services Inc., 222 F.3d 289, 293 (7th Cir. 2000) (citing cases).  The purpose of the requirement is to ensure that a plaintiff has "'a personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions." City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983).  A plaintiff seeking to invoke the power of the federal court bears the burden of demonstrating standing by establishing: (1) an "injury in fact– an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) a causal connection between the injury and the conduct complained; and (3) that a favorable decision likely will redress the injury.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted).

Defendant asserts that the case or controversy requirement is not met in the present case because the IAR lacks standing and the matter is not ripe for judicial review.  If a defendant asserts that subject matter jurisdiction is not evident on the face of the complaint, a motion to dismiss pursuant to Rule 12(b)(1) is analyzed as any other motion to dismiss, by

assuming for purposes of the motion that the allegations in the complaint
are true.  However, if the complaint is formally sufficient but the defendant
contends that there is "in fact no subject matter jurisdiction, the movant
may use affidavits and other material to support the motion.  The burden
of proof on a 12(b)(1) issue is on the party asserting jurisdiction.  And the
court is free to weigh the evidence to determine whether jurisdiction has
been established."  United Phosphorus, Ltd. v. Angus Chemical Co., 322
F.3d 942, 946 (7th Cir. 2004) (internal citations omitted).  The Court turns
first to the question of standing.

      1.   Standing

Defendant contends that the Complaint fails to adequately allege
standing.  Because Defendant is making a facial challenge to the allegations
of the Complaint, the Court assumes for the purposes of the Motion that
the allegations in the Complaint are true.  "When a plaintiff is an
association, the association has Article III standing to represent the interests
of its members if the individuals have standing in their own right; the
interests represented are germane to the association's purpose; and the relief
sought does not require the participation of the individual members."  Texas
Independent Producers & Royalty Owners Assoc. v. Environmental

Protection Agency, 410 F.3d 964, 971 (7th Cir. 2005).   The IAR's allegations in the Complaint satisfy the three requirements outlined above; the IAR has adequately alleged that it has standing to bring the instant action on behalf of its members whose First Amendment rights have been allegedly restricted by the challenged rule.

The Complaint alleges that the IAR members have standing in their own rights to challenge the validity of the rule at issue here.  According to the Complaint, the IAR represents approximately 60,000 real estate licensees who are directly affected by the challenged rule's chilling effect on their ability to engage in expressive activity.  "A plaintiff who mounts a pre-enforcement challenge to a statute that he claims violates his freedom of speech need not show that the authorities have threatened to prosecute him."  Majors v. Abell, 317 F.3d 719, 721 (7th Cir. 2003) (citing Virginia v. American Booksellers Ass'n, Inc., 484 U.S. 383, 393 (1988); Sequoia Books, Inc. v. Ingemunson, 901 F.2d 630, 633-34 (7th Cir. 1990); American Booksellers Ass'n, Inc. v. Hudnut, 771 F.2d 323, 327 (7th Cir. 1985), aff'd without opinion, 475 U.S. 1001 (1986)); see also Rhode Island Ass'n of Realtors, Inc. v. Whitehouse, 199 F.3d 26, 31 (1st Cir. 1999)("when dealing with pre-enforcement challenges to recently enacted (or, at least, non-

moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence."). This is so because "the threat is latent in the existence of the statute." <u>Id.</u> However, if the statute fails to cover the plaintiff's conduct, there is no latent threat. <u>Id.</u>

In mounting a facial challenge to the rule at issue here, the IAR alleges in the Complaint that the rule is a prior restraint on its members' protected speech because the rule, on its face, prohibits its members from using certain terms or phrases when advertising the sale or lease of a property located in a single-family zoning district. The Complaint alleges that as real estate licensees, the IAR members are engaged in the advertisement of properties for sale and that "[i]t is common place to see advertisements of members that use the terms that are now deemed to be false and misleading" under the challenged rule. <u>Complaint</u>, ¶ 14. Based on the allegations of the Complaint, the challenged rule clearly covers the intended conduct of the IAR members, thereby deterring constitutionally protected expression. Therefore, these allegations would support a finding of an injury in fact.

Further, the Complaint adequately states that the alleged injury is directly traceable to the Defendant's conduct. According to the Complaint, any violation of the challenged rule would result in, among other disciplinary actions, suspension or revocation of a license, or an imposition of a civil monetary fine of up to $25,000.00. The Complaint further asserts that the challenged rule has been in effect since June 2006, and there is nothing in the record indicating that the Defendant has affirmatively disavowed his intention to enforce the rule. See Whitehouse, 199 F.3d at 33 ("the Supreme Court repeatedly has found standing to mount pre-enforcement challenges to laws that had never been enforced" in cases implicating First Amendment concerns).; see also Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 302 (1979); Doe v. Bolton, 410 U.S. 179, 188 (1973). If true, the IAR's allegations show that its members are placed in the dilemma of either bearing the penalty of noncompliance by engaging in the prohibited conduct or "'incurring the disadvantages of complying[.]'" Metropolitan Milwaukee Ass'n of Commerce v. Milwaukee County, 325 F.3d 879, 883 (7th Cir. 2003) (quoting Whitney v. Heckler, 780 F.2d 963, 968-69 n.6 (11th Cir. 1986)). In viewing the allegations in the Complaint in the light most favorable to the IAR at this stage, the Court

finds that the IAR has adequately alleged, on behalf of its members, an immediate threat of injury, which is directly traceable to the Defendant's conduct.

Similarly, the IAR has adequately alleged, on behalf of its members, that a favorable decision would likely redress the alleged injury. The Complaint alleges that, because the challenged rule imposes a prior restraint on commercial free speech, the IAR seeks declaratory and injunctive relief. The Court finds that the alleged injury can be effectively redressed by the relief sought. Under the allegations of the Complaint, the IAR members have standing to sue in their own right.

Defendant, however, argues that the relief sought would not remedy the alleged injury because Illinois law (namely 225 ILCS 454/10-30), prohibiting misleading advertising, would remain intact and would not permit IAR members to engage in the commercial speech they desire. This argument is unavailing. Section 10-30 provides: "(a) No advertising shall be fraudulent, deceptive, inherently misleading, or proven to be misleading in practice. It shall be considered misleading or untruthful if, when taken as a whole, there is a distinct and reasonable possibility that it will be misunderstood or will deceive the ordinary purchaser, seller, lessee, lessor,

or owner . . . ." 225 ILCS 454/10-30.  Unlike § 10-30, which is couched in general terms, the challenged rule expressly prohibits the real estate licensees from using certain terms or phrases when advertising properties for sale or lease in a single-family zoning district.  The challenged rule therefore represents a prior restraint on commercial speech.  As such, the relief sought would cure this alleged defect by allowing IAR members to use the prohibited terms in a manner that conforms with § 10-30.

Based on the allegations of the Complaint, the second and third requirements of representative standing are also satisfied.  The Complaint specifically alleges that the interests the IAR seeks to protect are germane to the IAR's purpose, which is to represent its members in their professional capacities as real estate licensees, and that neither the claims asserted nor the relief sought require the participation of its members because the IAR seeks only prospective relief.  The allegations of the Complaint are therefore sufficient to support a finding of representative standing to the extent IAR members are personally injured.

Defendant relies on <u>Devine v. Robinson</u> for the proposition that mere speculative harm based on the Plaintiff's own interpretation of the challenged rule is not enough to show an actual or imminent injury.

Devine, 131 F.Supp.2d 963, 972 (N.D. Ill. 2001).  Devine is distinguishable
from this case.  The Devine plaintiffs, who were state prosecutors, brought
an action challenging the constitutionality of two ethical rules regarding
trade publicity on First Amendment grounds.  The plaintiffs contended,
among other things, that the challenged ethical rules restricted their
expressive activity under the First Amendment.   The Devine Court
concluded that the plaintiffs had failed to satisfy the standing requirement
in part because they had not satisfactorily alleged an immediate threat of
injury under any interpretation of the two ethical rules.  Id.  Here, however,
the IAR has adequately alleged an actual injury because, as explained earlier,
the alleged injury stems from the rule itself and from Defendant's
interpretation of it.   Under the challenged rule, as interpreted by the
Defendant in his January 19, 2006, letter, IAR members, as well as other
real estate licensees in the State of Illinois, are prohibited from using certain
terms or phrases when advertising the sale or lease of a property located in
a single-family zoning district.   Those who violate the rule face loss of
license, censure, and a civil fine of up to $25,000; thus, the imminent threat
of discipline is latent in the rule itself.  Majors, 317 F.3d at 721.

Defendant cites Lawson v. Hill to argue that the IAR has failed to

sufficiently allege standing.  <u>Lawson</u>, 368 F.3d 955 (7th Cir. 2004).  <u>Lawson</u>,

however, is inapposite here.  In <u>Lawson</u>, a 17 year-old student brought suit

against a county prosecutor in order to enjoin the State of Indiana from

enforcing the flag-desecration statute.  <u>Id.</u> at 956.  The plaintiff brought the

suit even though the defendant himself had never prosecuted anyone under

the statute, especially because he was aware that the Supreme Court had

announced that the First Amendment forbids punishing people who

desecrate their own American flag.  The <u>Lawson</u> plaintiff relied heavily on

<u>Majors</u> to argue that the "mere existence of the flag-desecration statute

establishes a threat of prosecution sufficiently great to allow her to sue."  <u>Id.</u>

at 957.  The <u>Lawson</u> Court, however, held that the plaintiff's reliance on

<u>Majors</u> was misplaced because the <u>Majors</u> decision pointed out that a

plaintiff making a pre-enforcement challenge to a statute must show that the

challenged statute clearly covers plaintiff's intended conduct.  <u>Id.</u>  The

<u>Lawson</u> Court explained that the flag-desecration statute did not cover the

plaintiff's conduct because the statute was clearly unconstitutional as

applied to Lawson's conduct, and the risk of prosecution was too remote.

Here, however, the allegations of the Complaint show that the challenged

rule covers the intended conduct of  IAR members, as discussed <u>supra</u>, and

the Defendant has shown no disinclination to enforce it.

In the alternative, Defendant argues that the IAR has no standing because the challenged rule can be construed in a manner that comports with First Amendment values. Defendant contends that the challenged rule merely creates a rebuttable presumption that certain advertisements are misleading or deceptive, and so, the IAR cannot show that its members have suffered an actual harm. Defendant explains that if an enforcement action is initiated against a licensee, the burden shifts to the licensee to demonstrate that the advertisement in question is not misleading. In support of this argument, Defendant relies on American Booksellers Ass'n for the proposition that in cases involving a facial challenge to a statute allegedly interfering with First Amendment rights, the statute in question will be upheld if it is readily susceptible to a narrowing construction that would make it constitutional. American Booksellers Ass'n, 484 U.S. at 397.

Defendant's reliance on the Supreme Court decision is misplaced. Defendant appears to have overlooked the subsequent sentence qualifying that principle. The Supreme Court explained that "[t]he key to application of this principle is that the statute must be 'readily susceptible' to the limitation; we will not rewrite a state law to conform it to constitutional

requirements."  Id.  In the instant case, neither the plain reading of the challenged rule, nor the Defendant's construction of the challenged rule, as set forth in the January 19, 2006, letter, demonstrates that the challenged rule is readily susceptible of a narrower construction.

More importantly, DFPR is the agency authorized, pursuant to the Act, to oversee the enforcement of administrative rules, including the challenged rule.  "Th[e] principle of deference to agency interpretation is even stronger when the agency is interpreting its own regulation.  When an agency interprets its own regulation [as here], the agency's interpretation is controlling unless plainly erroneous or inconsistent with the regulation." (internal quotations omitted).  Kronemeyer v. U.S. Bank National Association, 368 Ill. App.3d 224, 229, 857 N.E.2d 686, 690 (Ill. App. 2006).  There is nothing in the record suggesting that the Defendant's interpretation of the challenged rule is plainly erroneous or inconsistent with the regulation.  Defendant's argument therefore is without merit. Defendant's Motion to Dismiss for lack of standing is denied.

      2.   Ripeness

"The ripeness doctrine deals with the time, if any, at which a party may seek pre-enforcement review of a statute or regulation.  It seeks to

avoid the premature adjudication of cases when the issues posed are not fully formed, or when the nature and extent of the statute's application are not certain." Triple G Landfills, Inc. v. Board of Commissioners of Fountain County, Indiana, 977 F.2d 287, 288-89 (7th Cir. 1992) (internal citations omitted); New Mexicans, 64 F.3d at 1499.  To determine whether an issue is ripe for judicial adjudication, two questions are asked: (1) whether the relevant issues are "sufficiently focused" and developed so as to permit judicial resolution, without awaiting further factual development of the issues posed and (2) whether the postponement of the judicial resolution would cause hardship and injury to the parties.  Triple G. Landfills, 977 F.2d at 289.  "The customary ripeness analysis outlined above is, however, relaxed somewhat in circumstances such as [here] where a facial challenge, implicating First Amendment values, is brought." New Mexicans, 64 F.3d at 1499 (citing cases).  This is so primarily because of the chilling effect the challenged statute may have on First Amendment rights of free speech.  Id. at 1500.

The Court finds that, based on the allegations set forth in the Complaint, the case is ripe for judicial review because the issue posed here is fully formed and sufficiently developed.  The First Amendment issue--

whether the challenged rule restricts IAR members' First Amendment rights-
-is primarily an issue of law and no further factual development is necessary
because the Complaint alleges that the challenged rule has been in effect
since June 2006, and that failure to comply with the rule would result in
civil monetary penalty or disciplinary actions against the members of the
IAR.  See New Mexicans, 64 F.3d at 1500, 1504 ("In a wide variety of
settings, courts have found First Amendment claims ripe, often commenting
directly on the special need to protect against any inhibiting chill.") ("'[A]
[F]irst [A]mendment challenge to the facial validity of a statute is a strictly
legal question[.]"); see also Sequoia Books, 901 F.2d at 634 ("the usual rule
that the courts should avoid constitutional adjudication whenever possible
carries less weight in the First Amendment context.").  As such, the
Complaint sufficiently alleges that the issue posed here is ripe for
adjudication.

Similarly, based on the allegations of the Complaint, the second
prong of the relevant test weighs in favor of finding the First Amendment
issue ripe for judicial review.  The postponement of judicial review of the
issue posed here would cause hardship to the parties, especially because, as
alleged in the Complaint, the challenged rule impinges upon the IAR

23

members' ability to engage in protected expression.

Defendant, however, argues that the issue posed here is not ripe for review because neither the DFPR, the Office of Banks and Real Estate (the agency in charge of policing the Act according to the Defendant), nor the Illinois courts have had an opportunity to construe the terms of the challenged rule. <u>See</u> <u>Metropolitan Milwaukee</u>, 325 F.3d at 882. Defendant contends that the IAR's Complaint not only fails to allege that IAR members have sought a variance from the rule (which, according to the Defendant, is available and would ultimately defeat the ripeness of the IAR's claim), but also fails to allege that IAR members have requested an advisory letter from the DFPR regarding the application of the challenged rule in specific circumstances. Defendant's argument relating to the lack of state courts' interpretation of the challenged rule is unpersuasive. On that point, the Seventh Circuit has held that "[a]lthough it would be useful to have the benefit of [the state courts'] interpretation of the terms or reach of the [challenged rule], the absence of this information will not preclude judicial review of the . . . First Amendment issues." <u>Id</u>.

Defendant's arguments relating to the availability of a variance procedure and an advisory letter from the DFPR are likewise without merit.

The fact that the above procedures are available does not cure the challenged rule's chilling effect upon First Amendment rights of commercial speech.  IAR members still must seek permission before engaging in conduct proscribed by the rule.  "[I]f a plaintiff has standing to bring a facial challenge for injunctive or declaratory relief, 'applying for and being denied a license or an exemption is not a condition precedent to bringing a facial challenge to an unconstitutional law.'"  ACORN v. City of Tulsa, 835 F.2d 735, 739 (10th Cir. 1987) (quoting ACORN v. Golden, 744 F.2d 739, 744 (10th Cir. 1984)).  Accordingly, IAR members need not seek a variance, or an advisory letter before mounting a facial challenge against a statute that impermissibly infringes upon their First Amendment rights.  Id.  Moreover, the Defendant, in his letter dated January 19, 2006, has already expressed to the IAR that the challenged rule does prohibit certain phrases in certain situations as inherently misleading.  As such, the rule forbids the real estate licensees from using the prohibited terms in the advertisement of a property for sale or lease in a single-family zoning district.

Defendant cites numerous cases in support of his argument that the case is not ripe for adjudication.  As discussed infra, the cases cited by the Defendant are distinguishable from the present case.  Like the defendant in

ACORN, the Defendant here relies on Williamson County Regional Planning Comm. v. Hamilton Bank, a Fifth Amendment just compensation case, in arguing that the First Amendment issue posed in this case is not ripe. Williamson, 473 U.S. 172 (1985). "In *Williamson*, the Court held that a suit alleging that a zoning ordinance effected an unconstitutional taking of property under the [F]ifth [A]mendment was not ripe because the plaintiff had not sought a variance from the zoning commission, and thus had not exhausted its administrative remedies." ACORN, 835 F.2d at 739 (citing Williamson, 473 U.S. at 186). Defendant's reliance on Williamson, a Fifth Amendment takings case, is misplaced because laws applicable to Fifth Amendment claims are different from those applicable to First Amendment claims. In analyzing a Fifth Amendment case, the ACORN Court explained that "a court must consider the 'the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations[]", which cannot be determined until the administrative agency has had an opportunity to construe the application of the challenged regulations to the particular land in question. Id. at 739-40. "By contrast, a [F]irst [A]mendment challenge to the facial validity of a statute is a strictly legal question; *it does not involve the application of the*

*statute in a specific factual setting.*  Further, unlike an alleged unconstitutional taking, an ordinance that proscribes [F]irst [A]mendment activity inhibits those who would speak but for the threat of criminal sanctions." Id. at 740. As such, Defendant's reliance on Williamson is misplaced.

Similarly, Defendant's reliance on Crosetto v. State Bar of Wisconsin is unavailing.  Crosetto, 12 F.3d 1396 (7th Cir. 1993).  The Crosetto plaintiffs, who were Wisconsin lawyers, initiated a lawsuit against the Justices of the Wisconsin Supreme Court, the Wisconsin State Bar, and the Executive Director of the Wisconsin State Bar, attacking the validity of Wisconsin's integrated bar on First Amendment grounds.[4]  The Seventh Circuit held that the case or controversy requirement was not met in that case because the plaintiffs had failed to identify any Wisconsin lawyer who had in the past been disciplined for failing to pay his or her dues to the integrated bar.  Id. at 1403; see Devine, 131 F.Supp.2d at 972 (discussing Crosetto).  Crosetto is distinguishable from the present case because Crosetto did not involve a First Amendment speech claim.  Moreover, as alleged in the Complaint, the rule at issue here, unlike Wisconsin's

---

[4]As explained by the Crosetto Court, "[a]n integrated bar is one requiring both membership and the payment of dues as conditions of practicing law within the state." Crosetto, 12 F.3d at 1398 n. 1.

integrated bar, specifically proscribes the conduct of real estate licensees, including the members of IAR.  The IAR asserts in its Complaint that § 1450.140(a)(4) prohibits real estate licensees from using certain terms or phrases when advertising the sale or lease of real estate located in a single-family zoning district.  As the IAR notes in its Response brief: "[t]he threat of discipline [under the challenged rule] chills the speech of licensees, effectively eliminating their right to use certain terms in a manner that would not be misleading."  Plaintiff's Response, at 6.  Crosetto, therefore, is not applicable here.

Defendant next relies on J.N.S., Inc. v. State of Indiana for the proposition that the general policy of enforcing laws is not sufficient to render a claim ripe for judicial review.  J.N.S., 712 F.2d 303 (7th Cir. 1983).  Defendant's reliance on J.N.S. is misplaced.  The instant case does not involve a fear of prosecution that is merely imaginary or speculative.  Under the challenged rule, IAR members are prohibited from using certain terms or phrases when advertising the sale or lease of a property located in a single-family zoning district, and such reading of the challenged rule is supported by the Defendant's January 19, 2006, letter in which he explained that the challenged rule does prohibit certain terms or phrases in

certain situations as inherently misleading.  Accordingly, the controversy presented here--the challenged rule's alleged imposition of a prior restraint on expressive activity of the IAR's 60,000 members--is actual, impending, and immediate, not simply imaginary or speculative.

Defendant lastly relies on Renne v. Geary, 501 U.S. 312 (1991).  In reviewing the facts of Renne, the Court finds that Renne is readily distinguishable from this case.  In Renne, individual voters brought suit attacking the validity of California's constitutional provision prohibiting political parties from endorsing candidates for nonpartisan office on the grounds that the provision violated their First and Fourteenth Amendment rights.  The Supreme Court determined that the case was not ripe, in part, because "[t]he record . . . contain[ed] no evidence of a credible threat that [the challenged provision] will be enforced, other than against candidates in the context of voter pamphlets."  Renne, 501 U.S. at 322.  In discussing Renne, the Tenth Circuit in New Mexicans explained that the Renne Court did not find the case to be ripe "in part because there was no evidence the [California constitutional provision] would have been enforced against individual voters, but only candidates."  New Mexicans, 64 F.3d at 1502 n. 1.  In the instant case, however, the Complaint alleges that §

1450.140(a)(4) directly applies to real estate licensees and that the rule operates to interfere with or restrict the licensees' First Amendment rights of expressive activity.  As such, <u>Renne</u> is distinguishable from the present case.  Defendant's Motion to Dismiss for lack of ripeness is denied.

B.  <u>Abstention</u>

Defendant contends that this Court should abstain from adjudicating this case under the <u>Pullman</u> abstention doctrine based on the fact that neither the state courts nor the DFPR, the agency in charge of overseeing the enforcement of § 1450.140(a)(4), have had any opportunity to interpret or address the application of the challenged rule.  After having reviewed the record and the relevant case law, the Court sees no need to abstain from adjudicating this case.

"[T]he Pullman doctrine originated in the Supreme Court's decision in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)." <u>International College of Surgeons v. City of Chicago</u>, 153 F.3d 356, 365 (7th Cir. 1998).  "*Pullman* abstention is invoked to obviate the need to decide a federal constitutional issue where an unsettled question of state law might be dispositive." <u>Moses v. Kenosha County</u>, 826 F.2d 708, 709 (7th Cir. 1987).  Since its decision in <u>Pullman</u>, the Supreme

Court has clarified in subsequent decisions that the <u>Pullman</u> abstention applies "only when (1) there is a substantial uncertainty as to the meaning of the state law and (2) there exists a reasonable probability that the state court's clarification of state law might obviate the need for a federal constitutional ruling." <u>International College of Surgeons</u>, 153 F.3d at 365 (citing <u>Hawaii Hous. Auth. v. Midkiff</u>, 467 U.S. 229, 236 (1984); <u>Babbitt</u>, 442 U.S. at 306). Generally, abstention would be appropriate when both elements are satisfied.

Applying the two-part test outlined above, the Court finds that the <u>Pullman</u> abstention is not warranted in this case. As discussed <u>supra</u>, on its face, § 1450.140(a)(4) is not vague or ambiguous, even though Illinois state courts have not had an opportunity to interpret the challenged rule. <u>See City of Chicago v. Atchison, T. & S. F. Ry. Co.</u>, 357 U.S. 77, 84 (1958); <u>see also</u> <u>City of Houston v. Hill</u>, 482 U.S. 451, 470 (1987). According to the Complaint, the challenged rule clearly states that the use of certain terms or phrases, by real estate licensees, when advertising the sale or lease of a property located in a single-family zoning district shall be deemed misleading. This interpretation of the challenged rule is buttressed by the Defendant's January 19, 2006, letter, which stated in part: "The rules does

[sic], as you suggest, prohibit certain phrases in certain situations as inherently misleading." <u>Complaint</u>, Exh. 3. Additionally, Illinois courts have repeatedly held that, "'[w]here the language of a statute is clear and unambiguous, a court must give it effect as written, without 'reading into it exceptions, limitations or conditions that the legislature did not express.'" <u>Davis v. Toshiba Machine Co.</u>, 186 Ill.2d 181, 184-85, 710 N.E.2d 399 (1999) (quoting <u>Garza v. Navistar International Transportation Corp.</u>, 172 Ill.2d 373, 378, 666 N.E.2d 1198 (1996)).

Moreover, the Supreme Court has noted that in cases involving First Amendment claims (as in this case), courts should be mindful of the delays inherent in the <u>Pullman</u> abstention. <u>Baggett v. Bullitt</u>, 377 U.S. 360, 379 (1964); <u>Zwickler v. Koota</u>, 389 U.S. 241, 252 (1967). Indeed, such delays would prejudice the plaintiff by further chilling his or her First Amendment rights. <u>See</u> <u>Procunier v. Martinez</u>, 416 U.S. 396, 404 (1974). Because the first element has not been satisfied, the Court need not reach the second inquiry. Based on the aforementioned reasons, the Court sees no need to invoke the <u>Pullman</u> abstention in this case. Defendant's Motion to Dismiss on this basis is denied.

II.     <u>PLAINTIFF'S OBJECTION</u>

On July 6, 2006, the IAR filed a Motion for Preliminary Injunction, seeking to preliminarily enjoin the enforcement of § 1450.140(a)(4) (d/e 5).[5]  The IAR contemporaneously filed a Motion for Leave to File Expedited Discovery (d/e 7), seeking leave to conduct expedited discovery in order to adequately prepare for a preliminary injunction, which has not yet been  set. Pursuant to Fed. R. Civ. P. 26(d) and Fed. R. Civ. P. 26(f), the IAR sought leave of Court to take expedited discovery with respect to the following information:

> a) document discovery from Defendant calling for production of documents relating to the decision to implement the regulations at issue including:
> i) documents relating to "field investigations" regarding the speech prohibited by the regulations as referenced in the Department's response letter to Plaintiff attached to the Complaint as Exhibit 3.
> ii) documents relating to the Department's "examinations of data from the field" regarding speech prohibited by the regulations as referenced in the Department's response letter to Plaintiff attached to the Complaint as Exhibit 3.
> iii) all consumer complaints regarding the speech prohibited by the regulations including any complaints referring to the prohibited language as "misleading," "confusing" or "deceptive."

---

[5]The Court notes that Defendant filed a Response to the IAR's Motion for Preliminary Injunction, asking the Court to deny the Motion based in part on ripeness, standing, and abstention grounds.  Defendant's Response to Plaintiff's Motion for Preliminary Injunction (d/e 11).

        b) the deposition of the Illinois Department of Professional Regulation by its designated officer, director, or managing agent pursuant to Rule 30(b)(6); and

        c) interrogatories to Defendant regarding the regulation.

Plaintiff's Motion for Leave to Take Expedited Discovery, at 1-2.  The IAR has attached its discovery requests as exhibits to the Motion for Leave to Take Expedited Discovery.  See Plaintiff's Motion for Leave to Take Expedited Discovery, Exh. 1, Plaintiff's First Set of Interrogatories; Exh. 2, Plaintiff's First Request to Produce Documents to Defendant; Exh. 3, Notice of Deposition Pursuant to Rule 30(b)(6).  On August 9, 2006, Magistrate Judge Charles H. Evans denied the IAR's Motion for Leave to Take Expedited Discovery as being premature and also based upon Defendant's representation that his Response to the IAR's Motion for Preliminary Injunction did not rely upon the information sought by the IAR in its request for an expedited discovery.  See Order entered August 9, 2006. On August 21, 2006, the IAR filed an Objection to Judge Evan's Order denying its Motion for Leave to Take Expedited Discovery.  On September 5, 2006, Defendant filed a Response to the Objection (d/e 18).

        Plaintiff's Objection, however, is moot because the parties now appear to concede that discovery should take place after the Court addresses

Defendant's argument relating to ripeness, standing and abstention (which the Defendant has raised both in his Response to Plaintiff's Motion for Preliminary Injunction and in its Motion to Dismiss).   See Plaintiff's Objection, at 5; Defendant's Response to Plaintiff's Objection (d/e 18), at 2-3, 9.  Therefore, Plaintiff's Objection is moot.

THEREFORE, Defendant Martinez's Motion to Dismiss Complaint (d/e 16) is DENIED, and Plaintiff IAR's Objection to Magistrate Judge Evans' Order Denying Motion for Leave to Take Expedited Discovery (d/e 15) is DENIED as moot.  The parties concede that discovery is proper at this time.  The matter is therefore referred to Judge Evans for a scheduling order.

IT IS THEREFORE SO ORDERED.

ENTER:   February 23, 2007.

FOR THE COURT:

_____ s/  Jeanne E. Scott _____
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE